Mrs. Tobie BRANTLEY,
Plaintiff-Appellant,

v.

M.F. SURLES, Superintendent of
Education, Montgomery County,
et al., Defendants-Appellees.

No. 82–4237.

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1983.

Charles L. Lewis, Jr., Louisville, Miss., for plaintiff-appellant.

John L. Low, IV, Jackson, Miss., for defendants-appellees.

Before TUTTLE,\* POLITZ and GAR-WOOD, Circuit Judges.

POLITZ, Circuit Judge:

Invoking 42 U.S.C. § 1983, Mrs. Tobie Brantley sued the Superintendent of Education and the members of the Board of Education of Montgomery County, Mississippi, alleging that she had been discharged from her job as a public school cafeteria worker in violation of her constitutional rights. Specifically, she claimed that the Superintendent, with the board's confirmation, impermissibly infringed her right to direct the education of her child by firing her for the sole reason that her son attended a private academy rather than the local public school. The district court dismissed Brantley's suit, finding that she failed to state a claim upon which relief can be granted, that she had failed to exhaust available state administrative remedies, and that her suit was barred by the doctrine of *res judicata.* Concluding that the district court erred, we reverse and remand for further proceedings consistent herewith.

### Facts and Procedural Background

Mrs. Brantley was hired as a cafeteria worker in the Montgomery County school system in 1966. At the time of her discharge in the fall of 1976, she was manager of the Kilmichael Elementary School cafeteria.

Sometime before the beginning of the 1976–77 school year the Brantleys decided to transfer their younger son Chris from the local public high school to a private, segregated academy. According to Mrs. Brantley, they believed that Chris would

---

\* Circuit Judge of the Eleventh Circuit, sitting by designation.

have a better chance of playing varsity sports at the academy.

In August 1976 the board of education met with Mrs. Brantley to discuss the planned enrollment of her son in a private school while she served on the payroll of the public schools. It appears that members of the board had received complaints from other parents and were concerned that permitting Mrs. Brantley to continue her employment in the public school system while her son was enrolled in a private, segregated academy might "start a precedent that could get out of control and possibly cause dissention" within the schools. The board tentatively decided to discharge Mrs. Brantley. Superintendent Surles wrote to Mrs. Brantley on August 26, 1976 and invited her to attend the board's regular meeting on September 13, 1976.

On the day following the September meeting, Superintendent Surles wrote Mrs. Brantley to advise her that the board had decided to "release" her. He expressed the board's fear that her son's enrollment in the private, segregated academy would "jeopardize the state of tranquility" which then existed in the public schools. His letter mentioned no other reasons for firing Mrs. Brantley.[1]

Mrs. Brantley retained counsel who immediately wrote the Superintendent demanding a hearing and citing Mississippi law which forbade the firing of Mrs. Brantley for the assigned reason.[2] The board promptly set a hearing for November 1, 1976. In its notice letter to Mrs. Brantley's attorney, the board stated for the first time that Mrs. Brantley was "charged with neglect of duty, failure to provide adequate and palatable food in the cafeteria, and other good causes as reasons for her dismissal."

At the hearing, Superintendent Surles testified in support of his and the board's earlier decision while Mrs. Brantley explained the family's sports-related reason for enrolling their younger son in the private school. There was conflicting testimony about the quality of Mrs. Brantley's performance in the cafeteria. At the conclusion of the hearing the board met in executive session and thereafter affirmed its decision to fire Mrs. Brantley. The board found that

> Mrs. Brantley was not discharged for the sole reason of sending her child to a school outside the Montgomery County

---

1. The complete text of Surles' September 14, 1976 letter to Mrs. Brantley was as follows:

 Dear Mrs. Brantley:

 Never during my administration has the Board of Education been called upon to make a decision in a case wherein the personalities involved played such an important part.

 The contributions you and your family have made to our school system are many and your character and high ideals are very much appreciated by those of us who know you well.

 As you know the private school issue is still a source of conflict. Many eyes were on this case and the Board felt that allowing you to continue in your present employment with the Kilmichael Elementary School while your son is enrolled in a private school could start a precedent that could easily get out of control. In addition it might also cause dissention and the Board has no wish to jeopardize the state of tranquility we are now experiencing.

 The decision to release you was not lightly made and went against the grain of every member of the Board, myself included. It was felt that this was the only choice.

 We thank you for your many contributions to our system and wish you every success in whatever field of employment you may pursue.

 Yours truly,
 M.F. Surles

2. Miss.Code Ann. § 37–9–59 (1974) provides, in pertinent part:

 The governing authorities of every school district in this state are hereby prohibited from denying employment or reemployment to any person as a superintendent, principal or teacher, as defined in Section 37–19–1, or as a noninstructional personnel, as defined in Section 37–9–1, for the single reason that any eligible child of such person does not attend the school system in which such superintendent, principal, teacher or noninstructional personnel is employed.

 Miss.Code Ann. § 37–9–1 defines "noninstructional personnel" as "all employees of school districts other than superintendents, principals, teachers, and school bus drivers." Therefore, Mrs. Brantley was protected by the prohibition of § 37–9–59.

School System. The primary reason for her discharge was the quality of food preparation, courtesies extended and the general attitude of Mrs. Brantley in regard to her job.... The further action of Mrs. Brantley in sending her high school son to a private segregated academy [created] some dissention between the Black and White races in the school.

Mrs. Brantley brought suit in the Chancery Court of Montgomery County, Mississippi against Surles and the school board, alleging that she had been discharged, contrary to Miss.Code Ann. § 37–9–59 (1974), for the single reason that her son did not attend the public school system. The Chancery Court reviewed the evidence presented at the hearing,[3] including the several letters from Superintendent Surles to Mrs. Brantley which contained no mention of any reason for her discharge other than the fact that her son attended a private school, and concluded that the board's findings were not supported by substantial evidence. The court ordered that Mrs. Brantley be reinstated with back pay.

On appeal, the Supreme Court of Mississippi reversed and reinstated the board's discharge order, holding in an unpublished opinion that the Chancery Court had no jurisdiction to hear Brantley's appeal from the county board and that she had no property right in her job which warranted due process protection.[4]

Following the ruling by Mississippi's highest state court, Mrs. Brantley filed a second suit in Chancery Court in Montgomery County against the same defendants. She asserted the same cause of action and sought the same relief as in her prior suit, although the two suits differed procedurally. The first suit sought review of the board's action on the basis of the record

before the board, whereas the second was an ordinary lawsuit. The Chancery Court dismissed the second petition, assigning three reasons: (1) the suit was barred by the statute of limitations, Miss.Code Ann. § 15–1–29; (2) the causes of action were merged into the Mississippi Supreme Court's judgment and were barred by application of the doctrine of *res judicata;* and (3) as noted by the Mississippi Supreme Court, the Chancery Court had no jurisdiction.

On appeal, the Mississippi Supreme Court affirmed. *Brantley v. Surles,* 404 So.2d 1013 (Miss.1981). The court first reiterated its prior holding that the Chancery Court had no jurisdiction. It then stated that had the Chancery Court possessed jurisdiction, it would have been compelled to hold that the firing did not violate Miss.Code Ann. § 37–9–59, because the finding that Chris Brantley's enrollment in a private school was not the "single reason" for the discharge was supported by substantial evidence in the record before the board.

The instant suit followed. Mrs. Brantley contends that the board's demand that her son be enrolled in the public school system as a condition of her continued public employment constituted a violation of her constitutionally protected interest in educating her son wherever she deemed best as long as the school chosen satisfied the minimum standards imposed by the laws of Mississippi.

*Analysis*

1. *Statement of a Claim upon which Relief can be Granted*

■ To state a claim upon which relief can be granted under 42 U.S.C. § 1983, the plaintiff must allege that the defendant acted under color of state law to deprive

---

**3.** The Chancery Court treated the action as an appeal to be considered solely on the record compiled at the board's hearing.

**4.** The holding that the Chancery Court was without jurisdiction to hear the Brantley appeal was based on the fact that Mrs. Brantley was not a "professional personnel" within the meaning of the Public School Fair Dismissal

Act of 1974, Miss.Code Ann. §§ 37–9–59, 37–9–101–113 (1974). Under § 37–9–59, only professional personnel may appeal adverse school board decisions directly to Chancery Court. Nonprofessional personnel, such as cafeteria workers, must first seek review by the State Board of Education before they may resort to the courts.

her of a right, privilege, or immunity guaranteed by either the Constitution or laws of the United States. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Bradt v. Smith,* 634 F.2d 796 (5th Cir.1981). If the plaintiff satisfies this requirement, the federal remedy under § 1983 is available regardless of the availability of an adequate remedy under state law. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). As the Supreme Court stated,

> [i]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not first be sought and refused before the federal one is invoked.

*Id.* at 183, 81 S.Ct. at 482. Thus, if Mrs. Brantley is correct in arguing that her discharge impermissibly breached her constitutionally protected interest in the control of her son's education, then she may proceed under § 1983 notwithstanding both the existence of an adequate remedy under Miss. Code Ann. § 37–9–59 and her failure to secure relief in state court actions brought thereunder.

■ Although public school authorities may discharge an employee unprotected by a reasonable expectation of continued employment for any job-related reason or for no reason at all, *see Thompson v. Madison County Bd. of Educ.,* 476 F.2d 676 (5th Cir.1973), it is well established that they may not do so for a reason which infringes "constitutionally protected interests." *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). As the Supreme Court stated,

> if the government could deny a benefit to a person because of his constitutionally protected [conduct], his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Such interference with constitutional rights is impermissible.

*Id., quoting Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958).

■ The analysis does not end there, however, for § 1983 offers no relief if the employer shows that the employee would have been terminated, in any event, for reasons other than the participation in the constitutionally protected conduct. *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Montgomery v. Boshears,* 698 F.2d 739 (5th Cir.1983).

Whether Mrs. Brantley stated a claim cognizable under § 1983 thus poses a triad inquiry: (1) did she engage in constitutionally protected conduct which was impermissibly infringed by her discharge? (2) was the fact that her son attended private school a substantial motivating factor in the board's discharge decision? and (3) would she have been fired even if her son had remained a student in the public schools?

■ The Supreme Court has long recognized that the Constitution protects familial relationships and practices. *See, e.g., Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). The parental interest in the direction and control of a child's education is central to the family's constitutionally protected privacy rights. *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). As the Supreme Court stated in *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925),

> [t]he child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.

Thus, although a state may set forth minimum educational standards, "it may not pre-empt the educational process by requiring children to attend public schools." *Wisconsin v. Yoder,* 406 U.S. 205, 239, 92 S.Ct.

1526, 1545, 32 L.Ed.2d 15 (1972) (White, J., concurring). The state's power to control the education of its citizens is secondary to the rights of parents "to provide an equivalent education for their children in a privately operated school of [their] choice." *Norwood v. Harrison,* 413 U.S. 455, 461, 93 S.Ct. 2804, 2808, 37 L.Ed.2d 723 (1973). *See also Cook v. Hudson,* 429 U.S. 165, 166, 97 S.Ct. 543, 543, 50 L.Ed.2d 373 (1976) (Burger, C.J., concurring in dismissal of writ of certiorari).

The record before us contains no suggestion that the private school involved failed to satisfy Mississippi's minimum educational standards. Therefore we conclude that the Brantleys' school selection decision was within the penumbra of familial privacy rights guaranteed by the Constitution.[5]

■ This constitutional protection of familial privacy is not absolute; it must be measured. In the realm of public school employment, the court must balance the interests of the school employee with the interest of the state in promoting efficiency in the educational services which it provides through its school employees. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The state may legitimately interfere with the constitutionally protected conduct of a public school employee whenever that conduct materially and substantially impedes the operation or effectiveness of the educational program. *Tinker v. Des Moines School Dist.,* 393 U.S.

503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Van Ooteghem v. Gray,* 628 F.2d 488 (5th Cir.1980).

■ This suit was dismissed on the pleadings. The weighing and balancing mandated by *Pickering* have not been done. On remand, in addressing this issue, the district court must determine whether the enrollment of Chris Brantley in the private school materially and substantially interfered with the operation or effectiveness of the educational program at Kilmichael Elementary. If the court finds that it did not, then as a matter of law,[6] Mrs. Brantley's interest in controlling the education of her son takes precedence over the school board's interest in regulating the activities of its cafeteria workers.[7]

On remand the district court must also determine whether the protected activity played a substantial part in the board's discharge decision. If the court finds that it did, then the court must determine whether Mrs. Brantley would have been fired anyway for reasons completely independent of the private school enrollment decision. *Mt. Healthy.*

2. *Exhaustion of State Administrative Remedies*

■ The district court held that Mrs. Brantley could not seek a judicial remedy under § 1983 because she had not exhausted the state administrative remedies made

---

**5.** In so concluding, we intend to express no approval, either direct or indirect, of racial segregation in any form. We note with satisfaction the Supreme Court's holding, delivered after the events which precipitated the instant litigation, that 42 U.S.C. § 1981 does not permit private schools to exclude qualified children solely on the basis of race. *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

**6.** The question of whether specific conduct is constitutionally protected is ultimately a question of law. *See Burris v. Willis Independent School Dist., Inc.,* 713 F.2d 1087 (5th Cir.1983).

**7.** Defendants assert that *Cook v. Hudson,* 511 F.2d 744 (5th Cir.1975), *cert. dismissed,* 429 U.S. 165, 97 S.Ct. 543, 50 L.Ed.2d 373 (1976), controls the instant case. In *Cook,* a divided

panel held, in separate opinions, that the Calhoun County Board of Education's refusal to rehire three white teachers who sent their children to a private segregated academy did not violate the teachers' constitutional rights. The instant case differs from *Cook* in several respects, however, and is not controlled by it.

*Cook* involved the refusal to rehire classroom teachers whose actions, as found by the district court, threatened the successful operation of the schools. The board's decision in *Cook* was consistent with a specific, official policy in aid of a school desegregation order. The only official policy extant in the instant case is that of the State of Mississippi which forbids the discharge of school employees for the single reason that their children attend private schools. Miss.Code Ann. § 37–9–59. That statute was not in effect when the teachers in *Cook* were refused reemployment.

available to her by the Public School Fair Dismissal Act, Miss.Code Ann. §§ 37–9–59, 37–9–101–113 (1974). Although the district court was correct in stating that Mrs. Brantley could not properly commence a state court action under § 37–9–59 until she had exhausted her state administrative remedies, the Supreme Court has held that the exhaustion of available state administrative remedies is not a prerequisite to commencement of an action in federal court under § 1983. *Patsy v. Bd. of Regents of the State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982):

> The 1871 Congress intended [§ 1983] to throw open the doors of the United States courts to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights . . . and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary.

*Id.* at 2562 [quotation omitted].

3. *Res Judicata*

 The district court held that *res judicata* barred Mrs. Brantley's § 1983 action, based on the Mississippi Supreme Court's finding that she had lost on the merits in her second state court action under § 37–9–59. We do not agree. *Res judicata* does not apply because the § 1983 action asserted involves the determination of facts and issues which are distinct from those posed in the state court litigation. The constitutionally protected interests at stake do not arise from a state-created property right but, rather, emanate from the familial privacy right to control the educational path of one's children.

REVERSED and REMANDED.

GARWOOD, Circuit Judge, concurring:

Respecting the *res judicata* point, under 28 U.S.C. § 1738 we give the prior Mississippi judgments only such preclusive effect as Mississippi would. *See Southern Jam, Inc. v. Robinson*, 675 F.2d 94, 97, 98 (5th Cir.1982); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir.1982). The only

claim we hold Mrs. Brantley to have validly raised in this suit is her privacy right-liberty claim that she was discharged because of her son's attendance at private school, and would not have been discharged otherwise. As to this claim, the Mississippi court decisions were primarily based on jurisdictional grounds, namely, that in each case the chancery court had no original jurisdiction. In such circumstance, Mississippi apparently does not give preclusive effect to alternative determinations on the merits. *City of Jackson v. Creston Hills, Inc.*, 172 So.2d 215, 219 (Miss.1965). *See* Restatement (Second) of Judgments § 20, Comment *e* (last sentence) and Illustration 4 at 173. Therefore, *res judicata* is not available as to this claim. As to each of the other points presented by this appeal, I concur fully in the holdings and reasoning of the majority.