**Janice STOUGH and Sheila H. Sasser, Plaintiffs-Appellees,**

v.

**CRENSHAW COUNTY BOARD OF EDUCATION: John Rex Sport, etc., et al., Defendants-Appellants.**

No. 83–7428.

United States Court of Appeals, Eleventh Circuit.

Oct. 26, 1984.

Michael E. Jones, Alton L. Turner, Luverne, Ala., for defendants-appellants.

John M. Bolton, III, David B. Byrne, Jr., Montgomery, Ala., for Stough.

Ronald Wayne Wise, Montgomery, Ala., for Janice Sasser.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

The Crenshaw County Board of Education, the defendant below, adopted a patronage policy in 1976 which prohibits board employees from sending their children to private schools. Janice Stough and Sheila Sasser, the plaintiffs, are tenured teachers employed by the defendant. In 1982, both women requested an exemption from the policy so that they could enroll their children in Crenshaw Christian Academy, a virtually all-white private school. The board denied the requests and warned that the plaintiffs' employment would be terminated if they did not adhere to the policy. This action was filed in August of 1982 under 42 U.S.C. § 1983 against the board and its individual members.[1] The plaintiffs alleged that the patronage policy violates their rights under the first and fourteenth amendments by limiting their ability to direct and control the education of their children. The board responded that the policy is a permissible infringement on plaintiffs' rights since it furthers several important state interests. After a two-day bench trial the district court, 579 F.Supp. 1091, entered an order in favor of the teachers and the school board now appeals. We affirm essentially for the reasons stated in the district court's order.

■ There is no question in this case that the board's policy interferes with the plaintiffs' exercise of their constitutional right to control the education of their children. *See Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Dike v. School Board of Orange County, Fla.,* 650 F.2d 783 (5th Cir.1981). Therefore, the only issue before us is whether the district court properly concluded that the plaintiffs' individual rights as parents outweigh the legitimate interests of the board in operating and administering its school system. "The state may legitimately interfere with the constitutionally protected conduct of a public school employee

whenever that conduct materially and substantially impedes the operation or effectiveness of the educational program." *Brantley v. Surles,* 718 F.2d 1354, 1359, (5th Cir.1983). "The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen ... and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

The school board argues that this issue is governed by *Cook v. Hudson,* 511 F.2d 744 (5th Cir.1975), *cert. dismissed,* 429 U.S. 165, 97 S.Ct. 543, 50 L.Ed.2d 373 (1976). In that case a panel of the former Fifth Circuit addressed a similar situation in Mississippi and affirmed the lower court's ruling against the teachers. While *Cook* is binding precedent for this court, *see Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981), it does not dictate the result here. *See Brantley v. Surles,* 718 F.2d at 1359 n. 7. Each of the three judges sitting on the *Cook* panel wrote a separate opinion. Judge Coleman noted that the plaintiffs were not tenured teachers and expressed his opinion that persons employed or seeking employment in public schools have no right *to do so on their own terms ....*" He also reviewed the balancing test discussed in *Pickering v. Board of Education* and agreed with the district court that parental rights should yield to the interests of the state under the facts presented. Judge Roney declined to review the validity of the patronage policy and concurred in affirmance on very narrow grounds. He found support in the record for the trial judge's factual conclusion that the challenged patronage policy was an effective method of achieving court-ordered desegregation. Judge Roney specifically refused to decide whether the policy would be valid under "less compelling circumstances." In a strong dissent, Judge Clark argued that

1. The district court ultimately found that the individual defendants were entitled to a good faith immunity defense as discussed in *Wood v.* *Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and the teachers do not challenge that decision in this appeal.

the board's policy was unconstitutionally overbroad and questioned the sufficiency of the school board's evidence at trial.[2] Therefore, *Cook* did not establish a per se rule concerning the validity of school board patronage policies. It serves only as a previous application of established princi- ples to a similar situation. In this case we still must review the trial court's resolution of conflicting interests as discussed in *Pickering v. Board of Education.*

At trial below the board asserted four separate justifications for its patronage policy. First, it argued that the policy promotes good relationships among teachers. The board explained that some teachers resented another teacher's patronage of a private school. Second, the board alleged that a teacher's classroom performance would be diminished if he or she enrolled a child in Crenshaw Christian Academy because of the negative message communicated to the public school students. Third, the defendants claimed that the policy ensures favorable employer-employee relationships, which are necessary for an efficient school system. Finally, the board argued that the policy promotes desegregation and integration of the public school system. The trial judge reviewed each of these reasons but concluded that the evidence failed to establish one of them as sufficient justification for limiting the plaintiffs' fundamental rights. After careful review of the record, we find no basis for reversal.

■ There was conflicting evidence at trial concerning all of the justifications asserted by the board. Several teachers testified that they resented the plaintiffs' patronage of Crenshaw Christian Academy and one teacher stated that the resentment had created tension and an unpleasant atmosphere at a faculty meeting. Other teachers, including the plaintiffs, testified that the issue had little or no effect on faculty relationships. There was no evidence, however, that teacher relationships were critically impaired or "materially and substantially" interfering with the efficient operation of the school system. *See Fluker v. Alabama State Board of Education,* 441 F.2d 201 (5th Cir.1971); *Brantley v. Surles, supra.* Likewise, there was little evidence that patronage of a private school significantly impaired the ability of the plaintiffs to work for the board in operating a public school. We find that, contrary to the board's arguments, the personal preferences and beliefs of the board members and some teachers are not sufficient justification for denying the plaintiffs the right to choose and direct their children's education.

The board also contended below that its policy was designed to ensure good performance in the classroom. A psychologist testified that students would perceive the plaintiffs' patronage of a private school as a lack of confidence in the public school system. One student testified that she would view the plaintiffs or other teachers with children in private schools as racially biased. Another student stated that he would question the plaintiffs' dedication to teaching. The district judge found this evidence to be speculative and generally insufficient, and we agree. The psychologist could not refer to a statistical or other reliable study to support his opinion. There was no evidence that a public school teacher's classroom performance had actually been impaired after enrolling a child in private school, even though several Crenshaw County teachers had patronized private schools through the years. Indeed, the board produced no evidence showing that the plaintiffs' performance suffered during the 1982–83 school year when their children attended Crenshaw Christian Academy. In short, the board failed to prove

**2.** The Supreme Court dismissed a writ of certiorari in *Cook* as improvidently granted. *Cook v. Hudson,* 429 U.S. 165, 97 S.Ct. 543, 50 L.Ed.2d 373 (1976). The Court reasoned that a new Mississippi statute prohibiting school board patronage policies obviated the need for review.

As further support for its decisions to dismiss the writ, the Court cited *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), a recent decision which prohibited private, commercial, nonsectarian schools from denying admission on the basis of race.

that its patronage policy ensured better classroom performance of teachers.

The final justification given at trial by the board for its policy was the need to promote integration of its schools. This was the justification on which the school board prevailed in *Cook*, but there are significant factual distinctions between that case and the situation we address here. In *Cook*, the district court concluded that the sole reason why each plaintiff enrolled a child in private school was to avoid desegregation of the public school system. Additionally, the school board was operating under recently court-ordered desegregation and believed that its legal obligations included a faculty "totally committed to a desegregated school system." In the present case, the trial court did not find that segregation and discrimination were the motivating factors behind the plaintiffs' desire to enroll their children in private school, and the record does not compel this conclusion. The board also failed to establish that Crenshaw Christian Academy is a serious threat to integration of the public schools. In fact, enrollment at Crenshaw Christian Academy was lower at the time of trial than when it opened in the wake of integration in 1965. Although several parents, teachers, and students testified that they would interpret patronage of Crenshaw Christian Academy as racially motivated, the board did not establish a sound basis for those opinions. In other words, the district court found that the reasons and circumstances surrounding the adoption of the patronage policy in this case were not as "compelling" as in *Cook*.

For these reasons, the district court concluded that the "[d]efendants have not demonstrated that the conduct of these plaintiff-teachers substantially and materially interferes with the discharge of their duties and responsibilities as teachers." As discussed above, we find adequate support in the record for this finding. We do not today pass on the school board's policy itself. The board simply produced insufficient evidence to justify its application in this case. The order of the district court is therefore

AFFIRMED.