**Mary Ann FYFE, Plaintiff–Appellant,**

v.

**John CURLEE, in his Official Capacity, and the Aberdeen Municipal Separate School District, Defendants–Appellees.**

No. 89–4344.

United States Court of Appeals,
Fifth Circuit.

June 5, 1990.

Jim Waide, Tupelo, Miss., for plaintiff-appellant.

Deborah S. Davis, Michael P. Mills, Navarro, Mills & Davis, Aberdeen, Miss., for defendants-appellees.

Before BROWN, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Plaintiff, Mary Anne Fyfe, appeals a take-nothing judgment rejecting relief to her on her 42 U.S.C. § 1983 action. Plaintiff claimed that her employer, the Aberdeen Municipal Separate School District, and its superintendent John Curlee, retaliated against her for exercising her right to enroll her daughter Shannon in private school. We vacate the judgment of the district court and remand the case for trial on the appropriate remedy to which Mrs. Fyfe is entitled.

I.

The plaintiff, Mary Anne Fyfe, was employed for four years as a secretary to the Vine Street Elementary School principal by the Aberdeen School District in Aberdeen, Mississippi. In April 1987, the plaintiff and her husband, Ruffin Fyfe, removed their daughter Shannon from the Aberdeen public schools and enrolled her in Oak Hill Academy, an all-white private school in West Point, Mississippi. The Fyfes were concerned that Shannon had experienced difficulty getting along with another white child in the public school for four years and felt she would be happier at Oak Hill.

Around April 1987 a number of local black citizens and community leaders began boycotting Aberdeen businesses; the boycott continued during the summer and fall of 1987. The boycott was intended primarily to put pressure on the school system to increase the number of black teachers and administrators.

In June of 1987, School Superintendent John Curlee met with Mrs. Fyfe about Shannon's enrollment at Oak Hill Academy, and told Mrs. Fyfe that he "would prefer" that she work some place else. Mr. Curlee again met with Mrs. Fyfe in August of 1987, and told her he would "appreciate it"

if she would find a job elsewhere. Mrs. Fyfe told him the law stated she did not have to resign, and that she would not do so. Superintendent Curlee then transferred Mrs. Fyfe to a newly created job at the Resource Center.

Mrs. Fyfe considered her new job undesirable and she filed suit under 42 U.S.C. § 1983 in federal district court in September 1987; she alleged that the retaliatory job transfer violated rights secured to her under the First and Fourteenth Amendments. She sought reinstatement to her former position, nominal damages, damages for mental stress and anxiety, and attorneys' fees.

The case was tried in April 1989. At trial the plaintiff testified to the requests of the superintendent that she find work elsewhere, to her transfer, and to the menial nature of her new position. She also testified to knowing about the boycott, but stated that she had never received any threats or complaints from blacks concerning her decision; some blacks had "actually supported" her. The school district, in support of pretrial motions, had asserted through affidavits that the school was threatened with adverse effects from Mrs. Fyfe's action, including violence. But at trial, the school district adduced no evidence and rested after the plaintiff completed her case. The court denied plaintiff's motion for directed verdict, and the jury returned a general verdict in favor of the school district. Plaintiff appeals. After the jury verdict Mrs. Fyfe resigned her position with the school district.

Mrs. Fyfe argues on appeal that her unrebutted evidence established as a matter of law that the school district violated her constitutional rights.

## II.

■ To state a claim upon which relief can be granted under 42 U.S.C. § 1983, the plaintiff must allege that the defendant acted under color of state law to deprive her of a right, privilege, or immunity guaranteed by either the Constitution or laws of the United States. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Brantley v. Surles*, 718 F.2d 1354, 1357–58 (5th Cir.1983).

■ The plaintiff has the initial burden of establishing that her conduct was constitutionally protected, and that this conduct was a "substantial" or "motivating" factor in the decision to transfer her to a new position. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Kirkland v. Northside Indep. School District*, 890 F.2d 794, 799 (5th Cir.1989); *Burris v. Willis Independent School District*, 713 F.2d 1087, 1093 (5th Cir.1983). The question whether specific conduct or speech is protected by the First Amendment is ultimately a question of law. *Brantley*, 718 F.2d at 1359 n. 6; *Burris*, 713 F.2d at 1094.

■ We have no doubt that conduct such as Mrs. Fyfe's in transferring her daughter to private school enjoys constitutional protection. In *Brantley v. Surles*, 718 F.2d 1354 (5th Cir.1983), a public school cafeteria worker was discharged, allegedly because her son attended a private academy rather than the local public school. *Brantley* reinforced the Supreme Court's longstanding recognition that the Constitution protects familial relationships and practices, and that "[t]he parental interest in the direction and control of a child's education is central to the family's constitutionally protected privacy rights." *Brantley*, 718 F.2d at 1358, citing *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Mrs. Fyfe's decision to send her child to a private school was protected under the First Amendment and the penumbra of familial privacy rights recognized by the Supreme Court.

■ Mrs. Fyfe was also required to establish that her protected conduct was a substantial or motivating factor in the decision to transfer her. The defendant stipulated that Mrs. Fyfe's "decision to send her child to Oak Hill Academy was a significant and precipitating factor in its decision to transfer the plaintiff to another position." The school district did not present any other reason for the transfer.

The only remaining question is whether Mrs. Fyfe's transfer to a less responsible, more menial job at the same wage amounted to a constitutional deprivation.

Mrs. Fyfe was a non-tenured, non-instructional employee-at-will, and had no property interest or claim of entitlement to employment in the school system, or to her job at Vine Street Elementary School. Even though Mrs. Fyfe was an employee-at-will, the school district clearly could not discharge Mrs. Fyfe for exercising her constitutional right to control her child's education, unless it could demonstrate that the conduct materially and substantially interfered with the effectiveness of the school system. We stated in *Brantley:* [Although public school authorities may discharge an employee unprotected by a reasonable expectation of continued employment for any job-related reason or for no reason at all, *see Thompson v. Madison County Board of Education,* 476 F.2d 676 (5th Cir.1973), it is well established that they may not do so for a reason which infringes 'constitutionally protected interests.' *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972)]. *Brantley,* 718 F.2d at 1358.

■ Nor could Mrs. Fyfe be threatened with discharge for putting her child in private school, even if she was never actually fired. The Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563, 574, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968), stated that a threat of discharge can be a potent means of chilling the exercise of constitutional rights. Mrs. Fyfe testified that she was told by Superintendent Curlee that if she did not accept the transfer to the Resource Center "there would be no place for [her] in the public school system."

In *Reeves v. Claiborne County Board of Education,* 828 F.2d 1096 (5th Cir.1987), we held that the reassignment of a school administrator to a newly-created less desirable position within the school system to retaliate against her for testifying in a co-employee's lawsuit against her employer violated her First Amendment rights. The new position included no supervisory authority over other employees, and the district court found that "certain longtime perquisites were withdrawn from Reeves, such as reimbursement for attendance at state-wide school meetings and the overlooking of her shortened daily work schedule." *Id.* at 1098–99. We accepted the district court's finding that the Superintendent's action "recommending a mid-year transfer of Mrs. Reeves into a wholly unsuitable office space (the home economics kitchen) with no job description or administrative cooperation was 'an improper and retaliatory response to her testimony.' " *Id.* at 1102. Reeves' salary was not reduced during the balance of the year following her transfer, but she signed a new contract for a lower salary the following year. We held in *Reeves* that "[t]o allow a government employer to retaliate via demotion, transfer or reassignment against an employee's unfavorable trial testimony would undermine the ability of the witness to speak truthfully without fear of reprisal." *Id.* at 1100.

This court also stated in *Bickel v. Burkhart,* 632 F.2d 1251 (5th Cir.1980), "[w]here, as here, important conditions of employment are involved, a public employee will not be foreclosed from § 1983 relief merely because the impermissible retaliation did not result in the termination of his employment." *Id.* at 1255 n. 6. In *Bickel* we held that a promotion constituted an important condition of employment, so that a fireman was entitled to back pay and retroactive seniority where he established that he was not promoted because he voiced criticisms at a meeting. We also reversed and remanded a district court finding of no constitutional deprivation, where a teacher received a public reprimand and a reprimand letter in his file for a press release issued concerning the professional conduct of an unnamed principal. *Swilley v. Alexander,* 629 F.2d 1018 (5th Cir.1980). We noted in *Swilley* that "[a]lthough Swilley's employment was not terminated, it is quite possible for his property interests to have been affected by both the public reprimand and the reprimand letter." *Id.* at 1021 n. 4.

Mrs. Fyfe was transferred by the Superintendent from her job as secretary to an elementary school principal; Mrs. Fyfe and her principal testified her job gave her substantial authority and was both "demanding," and enjoyable. She was transferred to a newly-created job at the Resource Center where for half a year her only duties were xeroxing and laminating documents, and for the remainder of the year she primarily helped another secretary combine file folders. Mrs. Fyfe testified that the other secretary easily could have done this task alone. Mrs. Fyfe had no job description and no duties save the menial tasks described above. According to Mrs. Fyfe, when Mr. Curlee notified her of her transfer she knew "there was not a job available at the Resource Center. I asked [Mr. Curlee] if he had created a job? He said, yes. I asked him if he wanted me out of the school system. He said yes. I told him there was no job available at the Resource Center, and he said, yes." Mrs. Fyfe testified that she was not permitted to go into the schools, and her coworkers were forbidden to take breaks with her. We conclude that the uncontradicted evidence reveals that the school district violated rights secured to Mrs. Fyfe under the First and Fourteenth Amendments when it transferred her from a productive, satisfying position to a menial make-work one.

■ The only question that remains is whether the record supports the view that Mrs. Fyfe's protected conduct of enrolling her child in a private school was detrimental to the efficient operation of the appellee's school system. *See Pickering,* 391 U.S. at 568–70, 88 S.Ct. at 1734–35. We stated in *Brantley* that "[in] the realm of public school employment, the court must balance the interests of the school employee with the interest of the state in promoting efficiency in the educational services which it provides through its school employees." *Brantley,* 718 F.2d at 1359, citing *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The state may legitimately interfere with the constitutionally protected conduct of a public school employee only when that conduct materially and substantially impedes the operation or effectiveness of the educational program. *See Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

■ This balancing is to be conducted by the court as a matter of law, not fact. *See Connick v. Myers,* 461 U.S. 138, 148 n. 7, 150 n. 10, 103 S.Ct. 1684, 1690 n. 7, 1692 n. 10, 75 L.Ed.2d 708 (1983) (the court "cannot 'avoid making an independent constitutional judgment on the facts of the case.'"); *Nieto v. San Perlita Indep. School District,* 894 F.2d 174, 179 (5th Cir.1990).

Because the school district produced no evidence of substantial interference with its effectiveness as a result of Mrs. Fyfe's enrollment of her daughter in private school, Mrs. Fyfe must prevail as a matter of law. The record is completely silent on any effect Shannon Fyfe's move to the private school had on the appellee school district. This court held in the second appeal in *Brantley* that belief alone of such interference "unsupported by any objective evidence" is not sufficient to demonstrate material interference to carry the balancing test for the school district. *Brantley v. Surles,* 765 F.2d 478, 480 (5th Cir. 1985).

No causal link was ever made in the district court between the threatened school boycott and Mrs. Fyfe's action. When asked on cross-examination whether she was aware that one of the demands of the boycotting group was "that the school system not employ anybody who does now or ever has had a child in a private segregated academy," the plaintiff responded that she had read about that in the paper. The mere fact that this demand was made on the school system however cannot be sufficient to demonstrate that Mrs. Fyfe's enrollment of her daughter at a private school caused substantial and material interference with the school system's operation and effectiveness. The Supreme Court stated in *Tinker* that "in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome" the exer-

**406**

cise of First Amendment rights. 393 U.S. at 508, 89 S.Ct. at 737. There was no evidence of complaints by the boycotting blacks to the school district concerning Mrs. Fyfe's action, or even when the school boycott was threatened in relation to Shannon Fyfe's transfer.

Thus the defendant has failed to demonstrate that its action in reassigning Mrs. Fyfe was necessary to the smooth and efficient operation of the school system, and Mrs. Fyfe must prevail as a matter of law.

### III.

The only remaining issue concerns the appropriate remedy in this case.

■ Because we find a violation of plaintiff's constitutional rights, Mrs. Fyfe is at minimum entitled to nominal damages of $1. *See Memphis Community School District v. Stachura,* 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, 2543 n. 11, 91 L.Ed.2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978); *Familias Unidas v. Briscoe,* 619 F.2d 391, 402 (5th Cir.1980).

Mrs. Fyfe initially sought reinstatement to her former position, nominal damages, damages for mental stress and anxiety, and attorneys' fees. When this case was tried, Mrs. Fyfe was still working in the job she considered undesirable, and she asserted no claim predicated on constructive discharge. Mrs. Fyfe then resigned her position after judgment was rendered against her in the district court. Plaintiff's counsel at oral argument asserted that he will seek reinstatement of Mrs. Fyfe to her former position, and damages for mental stress and anxiety and constructive discharge if the case is remanded to the district court.

We remand this case to the district court for a trial on the appropriate remedy to which Mrs. Fyfe is entitled. Nominal damages of $1 will be awarded. Mrs. Fyfe is entitled to pursue her case in the district court for reinstatement to her original position, damages for mental anguish and for constructive discharge. Because she is the prevailing party, the district court must

also consider her claim for attorneys' fees under 42 U.S.C. § 1988.

The judgment of the district court is vacated because we conclude that Mrs. Fyfe established a constitutional violation as a matter of law. We remand for trial on the appropriate remedy available to Mrs. Fyfe consistent with this opinion.

REMANDED.