The Honorable Mike Huckabee Lieutenant Governor of the State of Arkansas State Capitol Building, Suite 270 Little Rock, Arkansas 72201
Dear Lieutenant Governor Huckabee:
This is in response to your request for an opinion on the following question:
 Whether the Lee County School District Superintendent may legally order all teachers employed by the district in Marianna to enroll their children in the public schools of Marianna or face termination, thereby forbidding public school teachers from sending their children to private schools?
It is my opinion that the answer to this question is in all likelihood "no." Such a policy would, in my opinion, most likely be ruled unconstitutional by the courts.
The United States Supreme Court has long recognized that parents have a constitutionally guaranteed right in directing the education of their children. In two of the early cases recognizing such a right, the Supreme Court stated this parental right is encompassed within the liberties protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In Meyer v. Nebraska, 262 U.S. 390 (1923), the Court held that the concept of liberty within the Due Process Clause of the Fourteenth Amendment includes a parent's right to send his child to a private school that offers specialized training in a particular subject. The Court expounded on this liberty interest in Pierce v. Society of Sisters, 268 U.S. 510
(1925), and stated that it included the right of parents to direct the education of their children. The case involved an Oregon law requiring all parents to send their children between the ages of eight and sixteen to the public schools and making violations of the law misdemeanors punishable by fine and imprisonment. Writing for a unanimous Supreme Court in Pierce,
Justice McReynolds stated the following:
 Under the doctrine of Meyer v. Nebraska, 262 U.S. 390, 67 L. ed. 1042, 29 A.L.R. 1446, 43 Sup. Ct. Rep. 625, we think it entirely plain that the Act of 1922 unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control . . . The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only. The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations. [Emphasis added.]
Pierce v. Society of Sisters, 268 U.S. at 534-35.
The Eighth Circuit Court of Appeals has cited Pierce with approval in Windsor Park Baptist Church v. Arkansas ActivitiesAss'n., 658 F.2d 618 (8th Cir. 1981), wherein the court stated the following:
 The general outline of relevant constitutional doctrine has been clear at least since Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). A State may not `standardize its children by forcing them to accept instruction from public teachers only.' Id. at 535, 45 S.Ct. at 573. The Fourteenth Amendment forbids the States to prohibit attendance at nonpublic schools, either secular or religious. But it does not forbid reasonable nondiscriminatory regulation designed to advance recognized secular interests, such as the quality of instruction. [Emphasis added.]
Windsor Park Baptist Church v. Arkansas Activities Ass'n,658 F.2d at 621.
While Windsor is not a case on point with the facts presented in your question, it does show the Eighth Circuit's belief that the Fourteenth Amendment protects a parent's right to control the education of his children.[1]
The constitutional right of parents to direct the education of their children also has been recognized under the freedom of association contained in the penumbra of the First Amendment. InGreen v. Connally, 330 F.Supp. 1150 (D.D.C. 1971), the court stated that the freedom of association supports the right to educate a child in the school of the parent's choice. Seealso Griswold v. Connecticut, 381 U.S. 479 (1965). Additionally, the constitutional right of privacy has been determined to encompass such a right as well. In Roe v. Wade,410 U.S. 113 (1973), the United States Supreme Court stated that parental decisions about the direction and control of a child's education are, in the Court's view, within the zones of familial privacy that the Constitution protects. See also Runyon v.McCrary, 427 U.S. 160 (1976). A short time after its decision inRoe v. Wade, the Supreme Court stated that the state's power to control the education of its citizens is secondary to the rights of parents "to provide an equivalent education for their children in a privately operated school of [their] choice." Norwood v.Harrison, 413 U.S. 455, 461 (1973).
In sum, whether viewed as a liberty right or an associational right or a privacy right, parents' rights to direct the education of their children have been deemed "fundamental" by the Supreme Court. See Roe v. Wade, 410 U.S. at 152-53; Wisconsin v.Yoder, 406 U.S. 205, 232 (1972).[2]
The Fifth and Eleventh Circuits have directly addressed the issue of whether public employees, particularly public school teachers, can constitutionally be prohibited from sending their children to private schools. In Cook v. Hudson, 511 F.2d 744 (5th Cir. 1975), public school teachers who were not rehired by the county board of education pursuant to an unwritten board policy that prohibited hiring of any teachers whose own children were enrolled in racially segregated private schools brought suit on the grounds that the policy violated their First andFourteenth Amendment rights. A three-judge panel of the Fifth Circuit decided the case, with two judges voting to affirm the district judge's decision in favor of the school board; however, the two judges voting to affirm wrote separate opinions and decided the case on different grounds.[3] The United States Supreme Court granted certiorari to review Cook v. Hudson,511 F.2d 744 (5th Cir. 1975), cert. dism. 429 U.S. 165 (1976), but following oral argument dismissed the grant as improvidently granted, citing as their reasoning that the passage of a state statute which would prohibit school boards from denying employment to any person solely because a child of the employee did not attend the employer's schools.
The Fifth Circuit has since determined that Cook v. Hudson does not provide the correct legal analysis for judging the constitutional validity of school board actions that require employees to send their children to public schools. In fact, in subsequent cases, the Fifth Circuit has rejected attempts by school boards to rely on Cook v. Hudson, and they instead have applied the balance-of-interests test the United States Supreme Court established in Pickering v. Board of Education,391 U.S. 563 (1968) and which the dissenting judge in Cook v. Hudson
advocated.
In Brantley v. Surles, 718 F.2d 1354 (5th Cir. 1983), a county board of education terminated the employment of a cafeteria worker at an elementary school for the sole reason that she enrolled her son in a private, segregated school rather than a public school. The members of the board of education stated that they had received complaints from other parents and were concerned that permitting the plaintiff to enroll her son in such a private school would cause "dissention" within the schools. The Fifth Circuit rejected the board's attempt to rely on Cook v.Hudson, 511 F.2d 744 (5th Cir. 1975), and held that the plaintiff's school selection was within the "penumbra of familial privacy rights guaranteed by the Constitution." Brantley v.Surles, 718 F.2d at 1359. Additionally, the Fifth Circuit stated that the proper legal analysis for determining whether the board's decision interfered with the plaintiff's constitutional rights is the balance-of-interests test set forth in Pickeringv. Board of Education, 391 U.S. 563 (1968), which provides the following:
 The problem in any case is to arrive at a balance between the interests of a teacher, as a citizen, in [the exercise of a fundamental right,] and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.
Pickering v. Board of Education, 391 U.S. 563, 568 (1968).
Citing Tinker v. Des Moines School Dist., 393 U.S. 503 (1969), the Fifth Circuit construed the Pickering balance-of-interests test as follows:
 The state may legitimately interfere with the constitutionally protected conduct of a public school employee whenever that conduct materially and substantially impedes the operation or effectiveness of the educational program. [Emphasis added.]
Brantley v. Surles, 718 F.2d at 1359.
The Fifth Circuit held in Brantley v. Surles that remand to the district court was necessary in order to determine, using the test set forth in Pickering, if the plaintiff's enrollment of her son in a private school "materially and substantially" interfered with the operation or effectiveness of the educational program at the public school at which the woman was employed.
The Fifth Circuit has once again addressed this issue in Fyfe v.Curlee, 902 F.2d 401 (5th Cir.), cert. denied, 498 U.S. 940,111 S.Ct. 346, 112 L.Ed.2d 310 (1990). In that case, a secretary to a public school elementary school principal brought an action alleging that the school district had retaliated against her for exercising her First and Fourteenth Amendment rights to enroll her child in a private, all-white school. In commenting on the plaintiff's constitutional right to enroll her child in a private school, the Fifth Circuit stated the following:
 We have no doubt that conduct such as Mrs. Fyfe's in transferring her daughter to private school enjoys constitutional protection. . . . Mrs. Fyfe's decision to send her child to a private school was protected under the First Amendment and the penumbra of familial privacy rights recognized by the Supreme Court.
Fyfe v. Curlee, 902 F.2d at 403.
In applying the Pickering balancing test, as they had done inBrantley v. Surles, 718 F.2d 1354 (5th Cir. 1983), the Fifth Circuit held in Fyfe that the school district had produced no evidence of substantial interference with its effectiveness as a result of the plaintiff's enrollment of her child in a private school, and that therefore, the plaintiff should prevail. Additionally, the Fifth Circuit held that the Pickering balance test to be applied in such cases was to be conducted by the court as a matter of law, not fact. Fyfe v. Curlee, 902 F.2d at 405. In sum, the court in Fyfe found that the plaintiff's First andFourteenth Amendment rights had been violated, and the fact that she had only been threatened with discharge, rather than actually discharged, for putting her child in a private school did not change this conclusion. See Fyfe v. Curlee, 902 F.2d at 404.
The Eleventh Circuit Court of Appeals has also addressed the issue of the constitutional right of public school employees to send their children to private schools. In Stough v. CrenshawCounty Bd. of Educ., 744 F.2d 1479 (11th Cir. 1984), a county board of education adopted a policy which prohibited board employees from sending their children to private schools. The plaintiffs in the case were tenured teachers employed by the board who wished to be exempted from the policy so that they could enroll their children in a virtually all-white private school. The board denied the teachers' requests and warned that their employment would be terminated if they did not adhere to the policy. The teachers filed suit under 42 U.S.C. § 1983
against the board, alleging that the policy violated their constitutional rights under the First and Fourteenth Amendments by limiting their ability to control the education of their children. As to the plaintiffs' constitutional rights involved, the Eleventh Circuit stated the following:
 There is no question in this case that the board's policy interferes with the plaintiffs' exercise of their constitutional right to control the education of their children. See Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070
(1925) . . . Therefore, the only issue before us is whether the district court properly concluded that the plaintiffs' individual rights as parents outweigh the legitimate interests of the board in operating and administering its school system.
Stough v. Crenshaw County Bd. of Educ., 744 F.2d at 1480.
The school board in Stough offered the following four separate justifications for its policy of preventing its employees from sending their children to private schools:
 (1) The policy promotes good relationships among teachers.
 (2) A teacher's classroom performance would be diminished if he or she enrolled a child in the private school in the community because of the negative message communicated to the public school students.
 (3) The policy ensures favorable employer-employee relationships, which are necessary for an efficient school system.
 (4) The policy promotes desegregation and integration of the public school system.
See Stough v. Crenshaw County Bd. of Educ., 744 F.2d at 1481.
In citing the Fifth Circuit's decision in Brantley v. Surles,718 F.2d 1354 (5th Cir. 1983), the Eleventh Circuit in Stough
stated that the correct legal analysis to apply in these cases is the Pickering balancing test. Therefore, the Eleventh Circuit reasoned that the issue involved in deciding the case was whether the conduct of the plaintiffs-teachers substantially and materially interfered with the discharge of their duties and responsibilities in their employment with the public school system. The Eleventh Circuit dismissed the first three justifications for the policy offered by the school board, as set forth above. In response to the fourth justification, the court held that because the trial court did not find that segregation and discrimination were the motivating factors behind the plaintiffs' desire to enroll their children in private school and because the board failed to establish that the private school to which the plaintiffs were sending their children did not represent a serious threat to integration of the public schools, the board failed to show that their reasons for the policy were "compelling." See Stough v. Crenshaw, 744 F.2d at 1482. Additionally, the Eleventh Circuit stated the following: "We do not today pass on the school board's policy itself. The board simply produced insufficient evidence to justify its application in this case." 744 F.2d at 1482. Therefore, the Eleventh Circuit seems to leave open the possibility that a school board might conceivably be able to offer justifications for such a policy which would enable a school board to prevail under thePickering analysis.
In sum, the more recent cases addressing the issue of school board policies which prohibit employees from enrolling their children in private schools have utilized the Pickering
balance-of-interests test which asks whether the school employee's decision to enroll his or her children in a private school materially and substantially impedes the operation or effectiveness of the educational program at the public school in which they are employed. This test allows courts to determine, within the factual circumstances of each case, whether the governmental interest asserted by the school board and the specific policy used to advance those interests justify restriction of the constitutional rights of employees. Neither the Fifth nor the Eleventh Circuits, which have squarely addressed this issue, has foreclosed the possibility that under specific factual circumstances a school board's affirmative duty to eliminate segregation may constitute a sufficiently compelling government interest. See Brantley v. Surles,718 F.2d at 1359; Stough v. Crenshaw, 744 F.2d at 1482. These courts have stated, however, that even in these circumstances, a board's policy must be more than a good faith effort to have some generally favorable impact on the objective of operating an integrated public school system or an attempt to place the burden of discouraging "white flight" on the school employees and their children. See Stough v. Crenshaw, 579 F.Supp. at 1098 (M.D. Ala. 1983), aff'd 744 F.2d 1479 (11th Cir. 1984). To this effect, the district court in Stough v. Crenshaw stated the following:
 It would strengthen an integrated school system if all parents were required to send their children to public schools. But so fundamental a right as choosing the type of education for one's child cannot be sacrificed consistent with the Constitution even for so worthy an end as promoting an integrated school system. These cases are difficult because this Court is particularly sensitive to the efforts of the public spirited citizens who serve on the Crenshaw County School Board when they have adopted a policy which in their opinion will strengthen the integrated school system in Crenshaw County. But in balancing the interest of the teacher in selecting the school for her child and the aim of the school board through this policy of promoting the efficiency of the schools, the Court finds that the scales tilt in favor of the fundamental rights of the plaintiffs.
Stough v. Crenshaw County Bd. of Educ., 579 F.Supp. 1091, 1098
(M.D. Ala. 1983), aff'd 744 F.2d 1479 (11th Cir. 1984).
Both the Fifth and Eleventh Circuits have held that to prevail, a school board must show that an employee's enrollment of his or her child in a private school causes a material and substantial disruption of the board's educational programs or school operations.
While there are no Arkansas or Eighth Circuit cases which address the particular issue you pose in your question, it is my opinion that these courts would look to the Fifth and Eleventh Circuits for guidance in such cases. Were they to do so, they would apply the Pickering balance-of-interests test as set forth herein. It is clear from the case of Windsor Park Baptist Church v.Arkansas Activities Ass'n, 658 F.2d 618 (8th Cir. 1981), as discussed on page 2 of this opinion, that the Eighth Circuit is in accord with the belief that a parent has certain constitutional rights with regard to the direction of his child's education. In addition, it has been held that a state may not condition public employment on the willingness of an employee or potential employee to forego the exercise of his or her rights protected by the Constitution. Norton v. Blaylock,285 F.Supp. 659 (W.D. Ark. 1968), aff'd 409 F.2d 772 (8th Cir. 1969).
In sum, it is my opinion that the actions taken by the Lee County School Superintendent are highly questionable due to the well-established constitutional rights which parents possess in relation to directing the education of their children. While there are no cases in this jurisdiction involving the issue posed by your question, it is my belief that the courts would look to other jurisdictions for guidance in such cases. Both the Fifth and Eleventh Circuit Courts of Appeals have addressed this issue and held that the balance-of-interests test, as set forth inPickering, is the appropriate legal analysis to apply in such cases. Under this test, a court would determine, considering the specific facts of the case, whether the governmental interests asserted by the school board and the specific policy used to advance those interests justify the restrictions placed on the school employees' constitutional rights to direct the education of their children.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] In Murphy v. State of Arkansas, 852 F.2d 1039 (8th Cir. 1988), the court stated that there is no fundamental right of parents to supervise their children's education to the extent where parents are completely responsible for every aspect of that education. This case involved the Arkansas Home School Act and the plaintiffs-parents objections to that portion of the act which requires parents educating their children at home to agree to submit their children to annual standardized achievement tests. The court's decision referred to the state's right to set certain regulations concerning education and does not affect, in my opinion, the issue posed in your question.
[2] The United States Supreme Court has, of course, noted limits on the constitutional right to choose private schooling. For example, in Pierce v. Society of Sisters, 268 U.S. 510, 534
(1925), the court stated that a parent's right to direct the education of his child is limited by "the power of the state reasonably to regulate all schools, to inspect, supervise, and examine them, their teachers and pupils . . ."
[3] For a full history of this case, see Johnson, The Rightof Public School Employees to Send Their Children to PrivateSchools: The Demise of Cook v. Hudson, 68 Ed. Law Rep. 21 (Aug. 15, 1991).