Janice STOUGH, Plaintiff,

v.

**CRENSHAW COUNTY BOARD OF EDUCATION, et al, Defendants.**

Sheila H. SASSER, Plaintiff,

v.

**CRENSHAW COUNTY BOARD OF EDUCATION et al, Defendants.**

Civ. A. Nos. 82–589–N (Stough), 82–639–N (Sasser).

United States District Court, M.D. Alabama, N.D.

June 28, 1983.

---

Robison & Belser, John M. Bolton, III and David B. Byrne, Jr., Montgomery, Ala., for plaintiff Stough.

De Ment & Wise, Ira De Ment, Montgomery, Ala. and Lightfoot & Nichols, John A. Nichols, Luverne, Ala., for plaintiff Sasser.

Alton L. Turner & Associates, P.A., Michael E. Jones and Alton L. Turner, Luverne, Ala., for defendants.

## MEMORANDUM OPINION

HOBBS, District Judge.

The above styled cases are submitted to this Court for final judgment following a

nonjury trial on the merits and submission of briefs by the parties. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1343.

## I

Plaintiffs are tenured school teachers who have been teaching in the Crenshaw County school system for many years. Plaintiff Stough achieved tenure status in 1974; plaintiff Sasser, in 1979. Each has at least one child enrolled in Crenshaw Christian Academy, a private school in Crenshaw County. Crenshaw Christian Academy is essentially an all white institution which was incorporated in 1965 in the wake of public school desegregation.

Plaintiffs' employer, defendant Crenshaw County Board of Education, in 1976 adopted a policy which provides in part:

1. That effective July 1, 1976, the official policy of the Crenshaw County Board of Education is that all employees of the Board shall patronize the public school systems in their respective counties of residence by enrolling all of their school-age children therein and all employees are so directed.

2. That no person shall be employed by the Crenshaw County Board of Education who is in violation of this policy.

3. That non-compliance with this policy by existing or future employees of the Crenshaw County Board of Education shall be considered as disloyalty to the Board and public school systems; insubordination; and grounds for dismissal or termination of contract.

Before the beginning of the 1982 school year, both plaintiffs applied to the Board for an exemption to this "patronage" policy. Both requests were denied.

■ Plaintiffs then instituted their 42 U.S.C. Section 1983 actions alleging that the policy of the Board violated their constitutional rights. Specifically, plaintiffs allege that the policy seeks to limit their right as parents to direct and control the education of their children. Plaintiffs assert that such right is protected from state interference by the First and Fourteenth Amendments.[1] Defendants on the other hand state that their policy relating to employment is a permissible limitation upon plaintiffs' liberty and that there exist important state interests which the policy seeks to protect.

## II

■ In order for a plaintiff to state a cause of action under Section 1983 there must exist some liberty or property interest that has been violated. Once a constitutionally protected interest is found, a court must balance the right asserted by the individual with the interests of the regulating authority, in order to determine which interest or right should prevail. The particular weight to be given to these different factors is controlled by the nature of the "interest" or "right" asserted. It is, therefore, instructive to review the only two prior court decisions in which these precise rights and interests collided.

In 1975 a divided court of the Fifth Circuit decided that a policy which mandates that public school teachers must send their children to public and not private schools, was a proper exercise of the defendant school board's power. *Cook v. Hudson*, 511 F.2d 744 (5th Cir.1975). After a per curiam recitation of the facts in the case, each of the three judges wrote separately. Judge Coleman viewed the policy as a permissible condition of employment. He stated that because the plaintiff was an employee of the board, he had no constitutionally protected right to remain employed by the board on his own terms. He concluded that the "parental right" involved must yield to the general discretionary power of the school board, which in his view had the

---

1. The exact right upon which plaintiffs base their constitutional claims is the right of a parent to direct the education of his or her child. That particular constitutional "liberty" can be viewed as "part of the citizen's Fourteenth Amendment liberty or First Amendment freedom of association or a combination of both ..." *Cook v. Hudson*, 511 F.2d 744, 750 (5th Cir.1975) (Clark, J., dissenting).

authority "to adopt and uniformly enforce a policy clearly designed, in good faith, to insure the undivided dedication of its teachers (and the appearance of that dedication) to the public school...." *Id.* at 749.

Judge Roney, in his concurring opinion, also found for the defendant school board, but based his holding on a much more narrow ground. He noted that since the plaintiffs were non-tenured teachers, defendants could refuse to rehire them for any reason, save an unconstitutional one. At trial the district court had found that the reason plaintiffs were not rehired was because of the school board's desire to strengthen local support for the public schools and to effectuate court-ordered desegregation. Judge Roney found this reason to be a constitutional one, and thus concluded that the Board had acted within its discretionary authority.

Judge Clark, the third member of the court, wrote a dissenting opinion. He stated that since 1925, the year the Supreme Court decided *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, parents' rights to direct and control the education of their children have been deemed a "fundamental right," and as such, a state must show a compelling interest in order to restrict that right. Judge Clark then applied a balancing test, weighing the interests of the plaintiffs and the competing interests of the defendants, deciding that the policy of the defendant school board could not be allowed to override a fundamental right of a parent to choose the school which his child would attend.

Following the decision by the Fifth Circuit in *Cook v. Hudson, supra,* the United States Supreme Court granted certiorari. Subsequently, it dismissed the writ of certiorari as improvidently granted. The Court stated two reasons for the dismissal. *Cook v. Hudson,* 429 U.S. 165, 97 S.Ct. 543, 50 L.Ed.2d 373 (1976). The first reason was that its recent opinion in *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) "prohibits private commercially operated, non-sectarian schools

from denying admission to prospective students because they are Negroes." *Cook v. Hudson, supra,* 429 U.S. p. 165, 97 S.Ct. at p. 543. Presumably the Court felt that this holding made it a less compelling reason for a school board to have such a policy as is here involved in order to maintain desegregated schools.

The second reason given by the Court for the dismissal of the certiorari was that the State of Mississippi had recently enacted a statute which prohibited school boards from "denying employment or re-employment to any person ... for the single reason that any eligible child of such person does not attend the school system in which such person is employed." Chief Justice Burger filed a concurring opinion to the per curiam dismissal, stating:

I join in the Court's disposition of this case. In doing so, I emphasize that our decision to dismiss the writ of certiorari as improvidently granted intimates no view on the question of when, if ever, public school teachers—or any comparable public employees—may be required, as a condition of their employment, to enroll their children in any particular school or refrain from sending them to a school which they, as parents, in their sole discretion, consider desirable. Few familial decisions are as immune from governmental interference as parents' choice of a school for their children, so long as the school chosen otherwise meets the educational standards imposed by the State. *See Pierce v. Society of Sisters,* 268 U.S. 510 [45 S.Ct. 571, 69 L.Ed. 1070] (1925); *Meyer v. Nebraska,* 262 U.S. 390 [43 S.Ct. 625, 67 L.Ed. 1042] (1923); *Wisconsin v. Yoder,* 406 U.S. 205 [92 S.Ct. 1526, 32 L.Ed.2d 15] (1972).

The only other case considering the same school board requirement for employment is *Berry v. Macon County Board of Education,* 380 F.Supp. 1244 (M.D.Ala.1971). In *Berry,* plaintiff schoolbus driver was fired because he violated the defendant school board's policy requiring all employees of the board to send their children to public schools. The board argued that the

policy was a "reasonable exercise of discretion in order to insure participation in and support of the public school system..." *Id.*, at 1247. The district court, without addressing the particular weight to be given to the competing interests involved, held that the defendant board had "no authority under state or federal law to compel school age children to attend public rather than private schools." *Id.* The court further stated that plaintiff's right to send his child to private school is a freedom protected by the Constitution, and that the employer could not enforce a policy which infringes such freedom. This district court opinion was not appealed.

It is against this background that the Court now examines the scope of the different interests asserted in the present case.

### III

The Supreme Court has stated that parents have a constitutionally guaranteed right "to direct the upbringing and education of children under their control." *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). Since no right or interest is absolute, and all rights are properly subject to *some* governmental interference, the inquiry becomes the scope of the interest present and the permissible extent that a state may regulate and limit that interest. Where the interest of the individual is deemed a "fundamental" one, then the courts have stated that any regulation limiting that right can only be justified by a compelling state interest and that the regulation or law limiting the asserted individual interest must be narrowly drawn to express only the legitimate state interest sought to be protected. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

In *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the Court held that the concept of liberty within the Due Process Clause of the Fourteenth Amendment includes a parent's right to send his child to a private school that offered specialized training in a particular subject. The Court labeled this right of the parent as an "essential" liberty. This essential liberty was later explained by the Court to include the "liberty of parents and guardians to direct the upbringing and education of children under their control." *Pierce v. Society of Sisters, supra.*

In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Court was faced with a state statute that required mandatory education of children in the state to age sixteen. The Court held that this statute was an impermissible limitation on an Amish parent's right to control the education of his child, when for religious and historical reasons Amish parents terminated their children's formal education some two years earlier. The Court addressed the scope of a parent's right to control the education of his child, stating:

> [T]his case involves the fundamental interest of parents, as contrasted with that of the State, to guide the religious future and education of their children. The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of parents in the upbringing of their children is now established beyond debate as an enduring American tradition. *Id.*, at 232, 92 S.Ct. at 1541–42.

Recognizing this interest, the Fifth Circuit in *Dike v. School Board of Orange County*, 650 F.2d 783 (1981), held that a mother who was employed as a schoolteacher by the defendant school board had a fundamental interest protected by the Constitution in the nurturing and rearing of her children, and that in light of that special interest, the board could not restrict the mother from breast feeding her child at work absent some compelling state interest. The court in *Dike* stated: "The Constitution protects from undue state interference citizens' freedom of personal choice in some areas of marriage and family life. These protected interests have been described as rights of personal privacy or as 'fundamental' personal liberties. See *Car-*

*ey v. Population Services Intl.*, 431 U.S. 678, 684 [97 S.Ct. 2010, 2015, 52 L.Ed.2d 675] (1977)."

██ The interest asserted by plaintiffs in these cases is thus a fundamental personal liberty: The right of a parent to make decisions concerning the education of his or her child is a basic right protected by our Constitution. The right, of course, is not absolute, and a state may impose regulations regarding the quality of education that a child might receive. But a parent who has the moral and legal obligation of support for a child has the right under our form of government to direct and guide that child's learning process.

██ Thus, it seems clear that if the policy in question applied to all citizens of Crenshaw County, the fundamental rights of the parents would override the general interest of the County in promoting public schools. Here, however, the parents are employees and teachers of the County School Board. As such they hold a unique position in the educational process. And although teachers do not shed their constitutional rights at the schoolhouse door, regulations affecting them must be viewed in light of their special relationship as teachers.

> The problem in any case is to arrive at a balance between the interests of a teacher, as a citizen, in [the exercise of a fundamental right,] and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Bd. of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

Defendants have advanced four separate interests which the challenged policy seeks to effectuate. It is these interests when considered in the context of the Crenshaw County school system which must be balanced against plaintiffs' fundamental rights.

## IV

The first interest asserted by the Board as a justification for the policy is that the policy promotes good teacher-teacher relationships. The testimony at trial established without dispute that the relationships that teachers have with one another is a factor which can affect the quality of education offered by a school or school system. There was trial testimony that some teachers within the Crenshaw County system resented plaintiffs because plaintiffs sent their children to private school. One witness testified that the mere presence of a plaintiff at a faculty meeting caused a certain "tenseness" in the air. Defendants argue that such resentments, if strong and prevalent enough, can adversely affect the whole educational system within Crenshaw County.

██ However, the causal link between the policy and such resentment is in dispute. Three teachers who have had their children in private school for many years, testified that at no time had they encountered any resentment because their children were in private school. Additionally, there was no evidence that other teachers in the school system generally knew or cared where their fellow teachers sent their children to school. Finally, the policy itself allows some teachers to send their children to private school. Accordingly, the policy in some cases allows the same evil that the Board asserts is so disruptive here. But most importantly, if the right to educate one's child in the school of one's choice is a fundamental Constitutional right, the reason for inhibiting this right must be more compelling than the contention that some fellow teachers may resent the exercise of that right. Rights guaranteed by the Constitution can not be infringed because of possible disharmony with one's colleagues.

Second, defendants assert that noncompliance with the policy has a detrimental effect on a teacher's classroom performance. They argue that students will perceive that a teacher who sends her child to private school is one lacking faith in the public school system, thus communicating a negative message to the students about their own ability to perform. Defendants

further state that parents and the public will receive this same negative message.

Defendants rely on two expert witnesses to support these contentions. These psychologists, Dr. Eicke and Dr. Harlan, stated that the policy was reasonably and significantly related to teacher performance. Dr. Eicke testified that he had doubts that a teacher who sent her children to private school in violation of the policy could ever overcome the negative message that her actions communicated to her students. However, neither expert could point to any specific study to support his conclusions, and each expert admitted that there are numerous factors that affect a teacher's performance in the classroom.[2] Also at trial the school superintendent testified that he could not detect any adverse effect on plaintiffs' teaching ability. It was shown that the evaluation of plaintiffs by school administrators remained at a very high level during the past year when their children have been in private school.

Thirdly, defendants state the board policy also insures favorable employee-employer relationships and that such relationships are necessary for an efficient school system. It is noted, however, that the Board has had teachers who, for a number of years, have had children in private schools, and there has been no suggestion that their relationships with the Board were adversely affected. Nor was there any evidence presented that the relationship of plaintiffs with the School Board was adversely affected, while plaintiffs' children attended private school.

The final interest that the Board contends is a compelling reason for the policy's existence is the Board's desire to promote desegregation and integration of the public school system in Crenshaw County. The Board is under an affirmative duty to eliminate segregation in its school system. The Board argues that the policy is one way of furthering that end.

## V.

This Court concedes that each of the four interests asserted by the School Board for the adoption of the policy could be viewed as rationally related to the Board's ultimate responsibility; that is, providing the best possible educational system to the students of public schools in Crenshaw County. The policy of the Board may be viewed as an effort to improve teacher-pupil, teacher-teacher and employer-employee relationships. But there should be more than a speculative or potential psychological problem for teachers and students before fundamental constitutionally protected activity can be prohibited. *Tinker v. Des Moines School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). One undisputed result of Board policy is that a teacher is not allowed to exercise her fundamental right to direct and control the education of her child. If the school board reasonably determined that a teacher's active participation in the NAACP or the Mormon Church had an adverse impact on teacher-teacher, or teacher-pupil or teacher-employer relationships, would a school board's prohibition of membership in such organizations survive constitutional challenge because the policy's objective was to improve relationships? Fundamental constitutional rights are accorded greater protection, and do not fall merely because their exercise may adversely affect some people with whom their work brings them in contact.

In *James v. Board of Education*, 461 F.2d 566, 572 (2d Cir., 1972), the court stated: "Although we can imagine situations in which a teacher would be so controversial because of his tenets or beliefs that he would be a disruptive force in the school, no one would suggest that he could be dismissed merely because he was *identified* with a particular cause if he did not preach that cause in class." (Emphasis in original)

In *Smith v. United States*, 502 F.2d 512, 516–517 (5th Cir.1974), the court stated:

---

**2.** Some of these factors are a teacher's age, experience, ability, enthusiasm, size of the class-room, management of the classroom, and student ability.

In striking that balance in the context of the First Amendment guaranty of freedom of speech, we feel that the standard of material and substantial interference is the standard to apply. In order for the government to constitutionally remove an employee from government service for exercising the right of free speech, it is incumbent upon it to clearly demonstrate that the employee's conduct substantially and materially interferes with the discharge of duties and responsibilities inherent in such employment. Defendants have not demonstrated that the conduct of these plaintiff teachers substantially and materially interferes with the discharge of their duties and responsibilities as teachers.

Board policy may also be viewed as having some favorable impact on the School Board's commendable objective of operating an integrated public school system. But does a step toward achieving this desirable objective outweigh the fundamental right of the parent to select the educational facility for her child? Defendants concede that the number of students presently attending the only private school in Crenshaw County is less than at the time the school opened in 1968. But they argue that "white flight" is still a problem in the Crenshaw County schools. To the extent that the policy is aimed at limiting "white flight," is the policy any more effectively aimed at Board employees than at any other county employee or any other citizen of the county? It would strengthen an integrated school system if all parents were required to send their children to public schools. But so fundamental a right as choosing the type of education for one's child can not be sacrificed consistent with the Constitution even for so worthy an end as promoting an integrated school system.

These cases are difficult because this Court is particularly sensitive to the efforts of the public spirited citizens who serve on the Crenshaw County School Board when they have adopted a policy which in their opinion will strengthen the integrated school system in Crenshaw County. But in balancing the interest of the teacher in selecting the school for her child and the aim of the school board through this policy of promoting the efficiency of the schools, the Court finds that the scales tilt in favor of the fundamental rights of the plaintiffs.

 The individual defendants asserted in their pleadings and at trial that their actions were taken in good faith. This Court agrees, and finds that the individual defendants who are sued in their individual capacity are entitled to a good faith immunity defense. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Plaintiffs' claims for monetary relief against defendants in their individual capacities will be denied.

An order and judgment will be entered in accordance with this memorandum opinion.

## ORDER AND JUDGMENT

In accordance with the attached memorandum opinion, it is ORDERED, ADJUDGED and DECREED:

1. That plaintiffs are denied any monetary relief against defendants in their individual capacities.

2. That, pursuant to Rule 25(d), Federal Rules of Civil Procedure, Ronnie Rhodes, as a member of the Crenshaw County Board of Education, be and he is hereby substituted as a defendant for the named Steve Landers, who has been replaced as a member of said Board by Rhodes.

3. That the policy of the Crenshaw County Board of Education, embodied in its "Policy Resolution" which was made effective July 1, 1976, requiring employees of defendant Board to send their children to public schools in the counties of their residence, is hereby declared invalid and unconstitutional.

4. That the defendants, either jointly or severally, their successors in office, or through their agents, are hereby permanently enjoined from enforcing said policy and from terminating or suspending plaintiffs' employment as a result of the enrollment of their children in private schools.

It is further ORDERED that plaintiffs are awarded the reasonable costs and expenses of this action, including attorney fees. Plaintiffs' attorneys are directed to file their petitions for attorney fees within fifteen days from the date of this order.