**Robin Joy SHAHAR,**

v.

**Michael J. BOWERS.**

**No. 1:91–CV–2397–RCF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 7, 1993.

Debra E. Schwartz, Stanford Fagan & Giolito, Atlanta, GA, Ruth E. Harlow, William B. Rubenstein, Am. Civ. Liberties Union Foundation, New York City, for Robin Joy Shahar.

Michael E. Hobbs, Office of State Atty. Gen., Dorothy Yates Kirkley, Gregory Russell Hanthorn, Jones Day Reavis & Pogue, Laura Lynne Pulliam, Paul Hastings Janofsky & Walker, William J. Holley, II, Parker Hudson Rainer & Dobbs, Atlanta, GA, for Michael J. Bowers, individually and in his

official capacity as Atty. Gen. of the State of Georgia.

### ORDER

RICHARD C. FREEMAN, Senior District Judge.

This action is before the court on plaintiff Robin Joy Shahar's motion for partial summary judgment [# 34–1] and defendant Michael J. Bowers' motion for summary judgment [# 35–1]. Both motions are opposed.

### BACKGROUND

The undisputed facts are as follows. Plaintiff attended Emory Law School from 1988–91, served as an editor of the Emory Law Review, and graduated sixth in her class. In the summer of 1990, plaintiff worked as a law clerk for the Georgia Department of Law [the Department]. After this clerkship, defendant offered plaintiff a permanent position as a Department attorney commencing in the fall of 1991. Plaintiff accepted this offer. Plaintiff's Statement of Facts, ¶¶ 3, 4, 8, 10.

In the fall of 1990, following her acceptance of defendant's employment offer, plaintiff completed a standard Department personnel form. In the "family status" section of this form,[1] she recorded her marital status as engaged, listed her future spouse as Francine Greenfield, and noted that Ms. Greenfield worked for a state of Georgia employer. See generally Exhibit A to Plaintiff's Motion for Partial Summary Judgment. The Department received this form in November of 1990 and filed it without fully reviewing the document. Plaintiff's Statement of Facts, ¶ 44.

Months later, in mid-June, 1991, plaintiff telephoned Deputy Attorney General Bob Coleman [Coleman] to discuss her upcoming employment. Coleman asked whether plaintiff could begin work in mid-September. Plaintiff stated that she would prefer to begin work later in the month, in light of her upcoming wedding. Plaintiff did not inform Coleman that her marriage would be to another woman, but did state that she would be changing her last name from Brown to Shahar. Plaintiff and Coleman also discussed plaintiff's division assignment. Plaintiff's Statement of Facts, ¶¶ 48, 49; Defendant's Statement of Facts, ¶ 25; Coleman Deposition, at 31–33.

Shortly after this conversation, Coleman mentioned plaintiff's upcoming wedding to Senior Assistant Attorney General Jeffrey Milsteen [Milsteen]. Milsteen subsequently learned from Susan Rutherford [Rutherford], a Department attorney, that plaintiff's planned marriage would be to another woman. Coleman Deposition, at 39–41; Milsteen Deposition, at 57–60.

Defendant was away from the office at this time, and learned of plaintiff's wedding plans upon his return. Coleman Deposition, at 51–52. Discussions between defendant and his staff regarding plaintiff's wedding plans ensued. The information relayed to defendant during these conversations included: (1) plaintiff's personnel form, (2) Coleman's summary of his phone conversation with plaintiff, (3) information of unspecified origin that plaintiff planned to send or had already sent invitations to the ceremony (and that some Department staff appeared on the invitation list), (4) information of unspecified origin that the planned ceremony would be large and/or take place in a church, and (5) information that Rutherford and another Department employee had seen plaintiff at a restaurant in the spring of 1991, at which time plaintiff informed them that she and her female dinner companion were preparing for their upcoming wedding. Plaintiff's Statement of Facts, ¶ 47, 58; Defendant's Statement of Facts, ¶ 24.

Coleman requested plaintiff's presence in his office on July 10, 1991. At this meeting, Coleman handed plaintiff a letter from defendant. The letter stated that defendant felt it necessary to withdraw his offer of employment based upon "information which [had] only recently come to [his] attention relating to a purported marriage between [plaintiff] and another woman." Defendant's Statement of Facts, ¶ 26; Plaintiff's Statement of Facts, ¶¶ 51, 53.

1. The Department includes this section to elicit information in connection with potential conflicts of interest. Plaintiff's Statement of Facts, ¶ 41.

Plaintiff asserts that defendant's withdrawal of his offer of employment unconstitutionally violated her rights to freedom of association, freedom of religion, equal protection of the law, and substantive due process of law. She requests declaratory and injunctive relief, including reinstatement. She also seeks compensatory damages and punitive damages from defendant in his individual capacity. *See generally* Amended Complaint, ¶¶ 36–58.

## DISCUSSION

### I. Standard for Summary Judgment

Under Fed.R.Civ.P. 56 the court should grant a motion for summary judgment where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The movant carries his burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). As the Eleventh Circuit has explained, "[o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 334, 106 S.Ct. at 2553. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court, resolving all reasonable doubts in favor of the nonmovant, must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.*

### II. The Parties' Cross–Motions for Summary Judgment on Plaintiff's Freedom of Association Claims

■ The Supreme Court has recognized two types of associations as constitutionally protected from unjustified government interference: intimate and expressive. *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). An "expressive" association involves the right to meet with others in order to pursue First Amendment freedoms, including freedom of religion. An "intimate" association consists of a personal relationship "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.,* 468 U.S. at 618, 104 S.Ct. at 3250 (citations omitted).

Plaintiff argues as a matter of law that defendant's decision to withdraw his employment offer imposed an unconstitutional burden on: (1) her right to intimate association with her female partner, (2) her right to expressive association with her female partner for religious purposes, and (3) her right to expressive association with friends, family, and members of her religious community for the purpose of celebrating her wedding. The court will analyze plaintiff's first two arguments as asserting a single intimate association claim. The court will not analyze plaintiff's third argument at this juncture because it: (1) overlaps plaintiff's free exercise claim, and (2) offers no greater claim to constitutional protection than plaintiff's intimate association claim.

### a. Plaintiff's Right to Intimate Association

■ The Eleventh Circuit has adopted an expansive view of the right to freely associate with others. *See Sawyer v. Sandstrom,* 615 F.2d 311 (5th Cir.1980) [2] (right to free association includes a general right to meet with whomever one chooses, even if such association is not for expressive purposes); *see also Wilson v. Taylor,* 733 F.2d 1539 (11th Cir.

---

2. All decisions of the former Fifth Circuit decided prior to October 1, 1981 are binding precedent for the Eleventh Circuit. *Bonner v. Prich-* *ard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

1984) (city's decision to fire a police officer for dating the daughter of a convicted felon implicated the officer's right to free association) (citing *Sawyer*).[3]

In asserting that her relationship with her female partner constitutes a constitutionally-protected association, plaintiff points to evidence that her wedding ceremony signifies a lifetime commitment which cannot end unless formally dissolved within her religion. *See* Plaintiff's Statement of Facts, ¶ 79, and Defendant's Response (offering no evidence to the contrary). The court agrees that such a relationship is entitled to constitutional protection.

The court's holding is not affected by defendant's assertion that plaintiff's association with her female partner merits no constitutional protection because it "does not involve a heterosexual relationship connected with (or simulating) creating or maintaining a family." Brief in Support of Defendant's Motion for Summary Judgment, at 47. The court need not resolve the parties' debate over the definition of "family" to determine whether plaintiff's relationship with her female partner constitutes a protected association. Family or quasi-family relationships "exemplify" the considerations which underlie the constitutional protection extended to intimate association. *See Roberts*, 468 U.S. at 618, 104 S.Ct. at 3250. Family and quasi-family relationships do not, however, constitute the only relationships protected by the right to intimate association. *Id.* at 620, 104 S.Ct. at 3251 (between the poles of familial affiliations and large business enterprises "lies a *broad range* of human relationships that may make greater and lesser claims to constitutional protection from particular incursions by the State") (emphasis added). Based upon the reasoning of *Roberts, Wilson,* and *Sawyer,* the court finds as a matter of law that plaintiff's relationship with her female partner constitutes a constitutionally-protected intimate association.

Defendant next argues that even if plaintiff's relationship constitutes a protected association, he did not burden that association because he withdrew his employment offer on the basis of a "particular activity" pursued in the course of plaintiff's association. *See* Brief in Support of Defendant's Motion for Summary Judgment, at 48. Defendant borrows this argument from cases in which defendant employers, apart from any concern with a plaintiff employee's sexual orientation, objected to certain conduct by the plaintiff employee. *See, e.g., Naragon v. Wharton,* 572 F.Supp. 1117, 1122 (M.D.La. 1983) (university could constitutionally reassign graduate student from a teaching to a research position based upon concern with her involvement in "a 'deep, personal romantic relationship' with a student, whether that relationship was homosexual or heterosexual"), *aff'd,* 737 F.2d 1403 (5th Cir.1984). Here, plaintiff's conduct ("holding herself out" as about to marry another woman) is not sufficiently separate from her intimate association (marrying another woman) to allow a finding that this association was not burdened. The court also disagrees with defendant that plaintiff was "free" to pursue her intimate association after the withdrawal of defendant's offer of employment. Instead, the court finds that plaintiff pursued her desired association only at the price of her desired employment. Thus, the question before the court is whether defendant justifiably imposed that price.

### b. Plaintiff's Right to Intimate Association as Compared to Defendant's Asserted Interests

The parties vigorously contest the applicable legal standard for determining whether defendant · has unjustifiably burdened plaintiff's right to intimate association. Plaintiff contends that any state intrusion on

---

**3.** *Sawyer* and *Wilson,* both decided before *Roberts,* do not speak in terms of "intimate" and "expressive" association. The court recognizes that *Wilson* has been faulted for blurring the distinction between expressive and nonexpressive association. *See, e.g., Swank v. Smart,* 898 F.2d 1247, 1251 (7th Cir.1990), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990) (associations for purposes other than expression are more properly viewed as stemming from the Fourteenth Amendment right to substantive due process rather than from the First Amendment). However, this debate is irrelevant to the case at bar because plaintiff's intimate association with her female partner also includes religious expression protected by the First Amendment.

an individual's freedom of association must be narrowly tailored to serve a compelling government interest. Brief in Support of Plaintiff's Motion for Partial Summary Judgment, at 36. However, the court agrees with defendant that, because this case stems from a government employment decision, a different analysis applies.

In *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968), the Supreme Court confirmed that, absent sufficient cause, a public employer may not constitutionally compel one of its employees to relinquish a constitutional right as a condition of employment. The *Pickering* Court recognized, however, that a state's interest in regulating the constitutionally-protected activity of its employees differs significantly from its interest in regulating the activity of its citizenry in general. Thus, the Court held that when a public employer infringes upon a constitutionally-protected right, the constitutionality of the employer's action turns upon a balancing between the employee's asserted interest and the employer's interest in the efficient delivery of public services.

Though *Pickering* involved the right to free speech, the Eleventh Circuit has applied its balancing test to cases involving other constitutional rights. *See Stough v. Crenshaw County Board of Education*, 579 F.Supp. 1091, 1096 (M.D.Ala.1983) (fundamental parental rights of teachers to educate their children as they see fit must be specially evaluated in light of their status as public school teachers, and balanced against school board's assertion that the efficient operation of public schools requires teachers to refrain from sending their children to private school), *aff'd* 744 F.2d 1479, 1481 (11th Cir. 1984) (citing with approval the district court's application of the *Pickering* balancing test); *see also Hatcher v. Board of Public Education*, 809 F.2d 1546, 1559 (11th Cir.1987) (directing district court to apply the *Picker-*

*ing* balancing test on remand to determine whether plaintiff's right to expressive association outweighed defendant's asserted interest in promoting the efficient operation of its schools).

■ Once all disputed facts are resolved, the ultimate balancing under *Pickering* is a question of law for the court. *Kurtz v. Vickrey*, 855 F.2d 723, 732 (11th Cir.1988). Here, the court need not resolve any issues of disputed fact, as each party relies upon undisputed facts in arguing for the entry of judgment as a matter of law on plaintiff's free association claim. After carefully weighing the undisputed facts, the court finds that the balance of interests tips in favor of defendant's assertions regarding the efficient operation of the Department.

Defendant's asserted interests embody two over-arching concerns: (1) public credibility, specifically the need to avoid the appearance of endorsing conflicting interpretations of Georgia law, and (2) internal efficiency, specifically the need to employ attorneys who act with discretion, good judgment, and in a manner which does not conflict with the work of other Department attorneys. *See* Brief in Support of Defendant's Motion for Summary Judgment, at 15–17; *see also* Defendant's Deposition, at 42–47, 90–91.[4] Plaintiff contends that her employment at the Department following her marriage and her acknowledgments of that marriage would have posed no significant threat to either of these overarching concerns. The court disagrees.

First, the court finds that defendant has advanced sufficient evidence to establish that members of the general public could eventually learn of plaintiff's union to her female partner. Plaintiff maintains that the union was private. However, she informed Rutherford, a future colleague, of her planned wedding. *See* Defendant's Statement of Facts, ¶ 24, and Plaintiff's Response (conceding this representation). Plaintiff also informed an

---

4. "Early on you asked me why I withdrew the offer and I told you two reasons, the credibility— I was concerned about the credibility of the office ... and the ability to handle the kinds of cases that would come up in the office.... [A] third underlying reason was because if we had hired Ms. Shahar, given this marriage, even if

she were not going to handle the cases, the fact that she might be perceived as taking or making a statement contrary to what some of the other lawyers had to do in defending this or that law or this or that position ... would be highly disruptive." Defendant's Deposition, at 90–91.

unspecified Department employee or employees that she was sending invitations to a fairly large number of individuals. *See* Plaintiff's Statement of Facts, ¶ 58 (stating that defendant had heard prior to withdrawing his offer that plaintiff had planned a large wedding and had sent or would send invitations to some Department employees), and Defendant's Response (admitting this fact). Plaintiff also informed Deputy Attorney General Coleman, with whom she had no acquaintance, that she planned to marry before beginning work. *See* Defendant's Statement of Facts, ¶ 25, and Plaintiff's Response (conceding that she represented to Coleman that she would be getting married and changing her last name); *see also* Plaintiff's Statement of Facts ¶ 46 (stating that she and Coleman "did not know one another") and Defendant's Response (admitting this fact). Finally, plaintiff indicated on her personnel form that she would be marrying a woman. *See* Defendant's Statement of Facts, ¶ 22, and Plaintiff's Response (not disputing that in filling out her personnel form she listed her marital status as engaged and also noted that her future spouse was a woman). These undisputed facts support defendant's contention that plaintiff's upcoming marriage and her representations regarding this marriage were public and not private in nature.

Second, the court finds sufficient evidence that members of the public could view defendant as acting inconsistently if he employed plaintiff but also argued in various types of cases that homosexual unions: (1) carry no legal benefits, and (2) do not carry the right to engage in consensual sodomy. While plaintiff's union violated no Georgia law, defendant correctly points out that Georgia law does not recognize same-sex marriages. Defendant also emphasizes that use of the term "spouse" in numerous sections of the Georgia Code does not include same-sex unions. Further, defendant offers undisputed evidence that the suspected sexual conduct of Department attorneys can be called into public question. Defendant emphasizes that in a recent Department case involving a heterosexual couple who engaged in consensual sodomy, opposing counsel sought to disqualify all Department attorneys who had violated the sodomy law. *See* Response to Plaintiff's Motion for Partial Summary Judgment, at 25; *see also* Exhibit B to Defendant's Motion for Summary Judgment. The record contains no indication that any Defendant attorney involved in this case engaged in any conduct even suggesting a violation of the sodomy law. Nonetheless, the conduct of Department attorneys was publicly challenged. This incident supports defendant's assertion that the efficient and credible operation of the Department requires attorneys to refrain from any conduct which appears improper or inconsistent with Department efforts in enforcing Georgia law.

Finally, the court finds that defendant has sufficiently supported his asserted concern regarding plaintiff's discretion and good judgment. In affidavit testimony of two Department attorneys who were scheduled to supervise plaintiff, an attorney testified that, in her opinion, plaintiff's representations regarding her upcoming marriage demonstrated that plaintiff "was either unaware of the nature of the work ... [done] at the Department of Law, particularly the [in] Criminal Division, or that [plaintiff] was not concerned about the sensitivities involved in working for the Department." Exhibit B to Response to Plaintiff's Motion for Partial Summary Judgment (Affidavit of Senior Assistant Attorney General Mary Beth Westmoreland, ¶ 5). The other attorney's testimony emphasized that Department attorneys largely operate "in a fish bowl" and, therefore, must take great pains to refrain from conduct which could be interpreted as contrary to a Department position on a particular issue. Exhibit A to Response to Plaintiff's Motion for Partial Summary Judgment (Affidavit of Criminal Division Attorney Paula Smith, ¶ 3).

Finding sufficient evidentiary support for defendant's articulated concerns regarding plaintiff's employment with the Department (given her planned marriage and representations regarding that marriage), and finding no evidentiary rebuttal sufficient to dispute these concerns, the court concludes that the unique circumstances of this case show that defendant's interests in the efficient operation of the Department outweigh plaintiff's interest in her intimate association with her female partner. Thus, the court denies

plaintiff's motion for summary judgment on her free association claim and grants defendant's motion for summary judgment on this claim.

### III. The Parties' Cross–Motions for Summary Judgment on Plaintiff's Free Exercise Claim

■ Plaintiff emphasizes that her decision to marry her female partner was motivated in part by a sincerely-held religious belief, and that both her religious community (a synagogue in the Reconstructionist Movement of American Judaism) and her rabbi supported this decision. *See generally* Plaintiff's Statement of Facts, ¶¶ 14–18, 23–24, 33–34. Thus, plaintiff contends that defendant burdened the free exercise of her religion when he withdrew his offer of employment. Plaintiff again contends that defendant's action was unconstitutional because it was not taken pursuant to a narrowly-tailored, compelling government interest.

Defendant responds that plaintiff's claim fails at the outset in light of the Supreme Court's ruling in *Employment Division, Dept. of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith,* the Supreme Court held that two members of the Native American Church who used peyote for religious purposes could not assert a free exercise challenge to secure an exemption from a generally-applicable criminal statute which prohibited the possession of controlled substances. *Id.,* 494 U.S. at 876, 110 S.Ct. at 1599. Because the case at bar involves an office policy[5] and not a religion-neutral, generally-applicable criminal statute, the court finds much of *Smith's* reasoning inapplicable.

However, the court does find *Smith* relevant to the extent that it places sharp limits on the compelling interest test articulated in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and advanced by plaintiff. *Sherbert* involved a Seventh-day Adventist Church member who was discharged for her unwillingness to work on Saturday (her Sabbath Day) and was subsequently denied unemployment compensation for her refusal to accept "suitable work." The *Sherbert* Court held that the church member's ineligibility for benefits stemmed directly from her religious practices and, therefore, indirectly burdened the free exercise of her religion. The Court held such a burden justifiable only on the basis of a compelling government interest which could not be satisfied by other means, and found that the state defendant had advanced no such interest. 374 S.Ct. at 403–05, 83 S.Ct. at 1794–95. The *Smith* Court, without overruling *Sherbert,* strongly questioned the continued viability of *Sherbert's* compelling interest test beyond the realm of unemployment compensation cases. *See Smith,* 494 U.S. at 883, 110 S.Ct. at 1603; *see also Church of Scientology Flag Service Org., Inc. v. City of Clearwater,* 2 F.3d 1514 (11th Cir., 1993) (citing *Smith* ). Thus, the court declines to apply *Sherbert* to the case at bar.

The balance of cases cited by both plaintiff and defendant do not discuss what legal test applies where a government *employment* decision results in an asserted indirect burden on the free exercise of a public employee's religion. Thus, in the absence of clear guidance to the contrary, the court concludes that the *Pickering* balancing test applies to plaintiff's free exercise claim. Assuming without deciding that defendant indirectly burdened plaintiff's right to freely exercise her religion, the court finds that any burden suffered by plaintiff was justified in light of the above-discussed unique governmental concerns involved in the efficient operation of the Department. Accordingly, the court grants defendant's motion for summary judgment on plaintiff's free exercise claim and denies plaintiff's motion for summary judgment on this claim.

### IV. Defendant's Motion for Summary Judgment on Plaintiff's Equal Protection Claim

■ Plaintiff contends that when defendant withdrew his offer of employment based

---

**5.** "Department employees may not conduct themselves in ways that are inconsistent with state law, publicly take positions that are inconsistent with the stance taken by the Department of Law, or conduct themselves in ways that undermine the credibility of the Attorney General's Office." Response to Plaintiff's Motion for Partial Summary Judgment, at 13–14.

upon her marriage to another woman, he violated her right to equal protection of the law by acting with the intent to discriminate against her on the basis of her sexual orientation. Amended Complaint, ¶ 47. In response, defendant contends that he had no such discriminatory intent.

The Equal Protection Clause of the Fourteenth Amendment obligates a state, through its officials, to treat similarly situated persons in a similar manner. It forbids the application of a legitimate, fair policy in an uneven manner. *Yick Wo v. Hopkins,* 118 U.S. 356, 373, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). Its mandate is violated when an official draws distinctions regarding similarly situated persons without fairly grounding the distinctions in a legitimate government objective. *Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir.1981). However, a successful equal protection claim requires a showing that the challenged action was undertaken with an intentionally discriminatory purpose. *Washington v. Davis,* 426 U.S. 229, 239–42, 96 S.Ct. 2040, 2047–49, 48 L.Ed.2d 597 (1976). Proof of discriminatory intent violative of the Equal Protection Clause requires more than a showing that a government actor was merely aware, or could have foreseen, that an action would adversely affect on a particular classification of persons. Instead, a plaintiff must show "that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).

Defendant argues that the withdrawal of his offer was motivated by neither plaintiff's classification as a homosexual nor by an intent to discriminate against plaintiff on the basis of her sexual orientation. Defendant asserts that, rather than basing his decision merely on plaintiff's sexual orientation, he withdrew the offer because plaintiff "held herself out as 'getting married' to another woman, an arrangement that is inconsistent

with Georgia law." Brief in Support of Defendant's Motion for Summary Judgment, at 25. To support the contention that he does not discriminate against homosexuals as a general class, he points to deposition testimony indicating that: (1) he has never inquired as to the sexual orientation of a Department employee, (2) he would never exclude a homosexual from employment solely on the basis of his or her sexual orientation, (3) he in the past refused to inquire into the sexual orientation of an allegedly homosexual attorney accused of abusing his position as a Department attorney to protect a same-sex lover, and (4) when he extended plaintiff an offer of employment, he had constructive knowledge of plaintiff's sexual orientation through plaintiff's disclosures to various Department employees. Brief in Support of Defendant's Motion for Summary Judgment, at 24–25. Such evidence indicates a lack of discriminatory intent and meets defendant's summary judgment burden by showing that no factual dispute exists as to his nondiscriminatory intent.

In response, plaintiff argues that defendant "implausibly attempts to show that [p]laintiff's sexual orientation played no role in his decision to fire her, and thus that she has not made out the basic elements of an equal protection claim." Response to Defendant's Motion for Summary Judgment, at 35. She asserts that defendant's allusion to her relationship with another woman in his termination letter, and in each of his explanations for writing this letter, will establish at trial that this case "involves a government classification," namely, sexual orientation. *Id.,* at 36. She further argues that at trial she can present evidence indicating that defendant acted, at least in part, with the specific intent to discriminate against her on the basis of her sexual orientation. *Id.,* at 38.[6]

The court disagrees that the evidence cited by plaintiff could establish that defendant acted on the basis of a "classification" consisting of homosexual persons. It is true, of course, that defendant's mention of plaintiff's

---

6. Plaintiff also presents arguments and evidence comparing herself to married heterosexual Department attorneys, whom plaintiff emphasizes are allowed to reveal their family status without repercussions. Because heterosexual marriages are recognized by state law and plaintiff's marriage is not, plaintiff and married heterosexual Department attorneys are not similarly situated. Thus, these arguments do not advance plaintiff's equal protection claim.

relationship with another woman exhibits an awareness of plaintiff's sexual orientation. However, each of defendant's justifications emphasize and depend upon plaintiff's planned *marriage* to another woman and her acknowledgement of that marriage to others. Thus, defendant's "classification"—if any—is not based on mere sexual orientation, but on sexual orientation *plus* conduct viewed by defendant as inconsistent with state law and Department efforts in applying state law.

Further, even if plaintiff could establish that defendant acted at least in part based upon plaintiff's "classification" as a homosexual, she has failed to point to specific facts which could establish that defendant withdrew his offer with a purposeful intent to discriminate on the general basis of sexual orientation—*i.e.,* that defendant withdrew the offer "because of" plaintiff's orientation rather than "in spite of" that orientation. In this vein, plaintiff argues that defendant's intent to purposefully discriminate is evidenced by the impact of his decision, his justifications for his decision, and the fact that he came to his decision "quickly and as a result of very little information." Response to Defendant's Motion for Summary Judgment, at 38.[7] The court finds that the evidence proffered in support of these arguments, viewed in a light most favorable to plaintiff, fails to raise a genuine issue of fact as to whether defendant acted with an impermissible intent. Plaintiff's evidence fails to rebut, and for the most part even fails to respond to, defendant's evidence regarding his attitude towards and treatment of homosexuals generally. Thus, plaintiff's evidence could not convince a reasonable fact-finder that defendant withdrew his decision in whole or in part based on an intent to discriminate against plaintiff on the basis of her sexual orientation. Accordingly, the court grants defendant's motion for summary judgment on plaintiff's equal protection claim.

## V. Defendant's Motion for Summary Judgment on Plaintiff's Substantive Due Process Claim

■ In addition to her other constitutional claims, plaintiff asserts a "distinct cause of action that stems from the Attorney General's arbitrary employment decision." Response to Defendant's Motion for Summary Judgment, at 68 n. 52. She contends that the arbitrary nature of defendant's decision "deprived [her] of her right to substantive due process, as protected by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983." Amended Complaint, ¶ 55.

As the Eleventh Circuit has recently held:

> The current test in this circuit as to whether there has been a violation of substantive due process in the context of § 1983 is twofold. First, it must be determined whether there has been a deprivation of a federal constitutionally protected interest, and secondly, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to raise an ordinary tort to the statute of a constitutional violation [*i.e.,* an arbitrary and capricious action].

*Corn v. City of Lauderdale Lakes,* 997 F.2d 1369, 1374 (11th Cir.1993) (quoting *Rymer v. Douglas County,* 764 F.2d 796, 801 (11th Cir.1985)).

■ Plaintiff correctly argues that the right to substantive due process protects individuals from abusive government power. *See Rymer,* 764 F.2d at 802 n. 4; *see also Thompson v. Gallagher,* 489 F.2d 443, 447 (5th Cir.1973) ("The Fourteenth Amendment stands for the proposition that the government must act, when it acts, in a manner that is neither arbitrary nor unreasonable."). However, *Corn* and *Rymer* emphasize that this protection is triggered by the deprivation of a federally-protected interest, such as plaintiff's asserted rights to free association and the free exercise of her religion. Aside from these two federally-protected interests, plaintiff advances no additional interest in support of her allegedly separate substantive due process claim. She has conceded from the outset that she had no property interest

---

**7.** Plaintiff supports these assertions by alluding to facts cited earlier in her response brief at 2–13 and/or 14–35.

in the employment promised to her. Further, her response to defendant's motion for summary judgment fails to address defendant's contention that the withdrawal of his offer did not deprive plaintiff of a liberty interest. Plaintiff, therefore, cannot allege a "distinct cause of action that stems from the Attorney General's arbitrary employment decision." Thus, the court grants defendant's motion for summary judgment on plaintiff's separately-asserted right to substantive due process. To the extent that plaintiff's substantive due process claim overlaps her freedom of association and free exercise claims, it is also subject to summary judgment in favor of defendant in light of the above-outlined analysis of each of these claims.

## VI. Defendant's Assertion of Qualified Immunity

Because defendant is entitled to summary judgment on each count of plaintiff's Amended Complaint, the court need not reach defendant's arguments regarding his asserted immunity from plaintiff's request for compensatory and punitive damages.

## CONCLUSION

For the reasons outlined above, plaintiff Robin Joy Shahar's motion for partial summary judgment [# 34–1] is DENIED and defendant Michael J. Bowers' motion for summary judgment [# 35–1] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of defendant on all counts and to DISMISS this action.

SO ORDERED.